GERALD KANE, Also Known as GERRY KANE, et al., Appellants,
v HER-PET REFRIGERATION, INC., et al., Respondents.

Second Department, July 27, 1992

### APPEARANCES OF COUNSEL

*Eisenberg, Margolis & Friedman (Mitchell R. Friedman* of counsel), for appellants.

*Curtis, Zaklukiewicz, Vasile, Devine & McElhenny (Roy W. Vasile* of counsel), for Her-Pet Refrigeration, Inc., respondent.

*Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger (Patricia W. Congdon* of counsel), for Michael Mc-Carvill, respondent.

### OPINION OF THE COURT

RITTER, J.

This appeal presents the question of whether surveillance evidence—photographs, motion pictures, and videotapes—obtained in preparation for the defense of a personal injury claim, should be discoverable prior to trial by the claimant. The Appellate Divisions of the First, Third and Fourth Departments have ruled on the question, but are in conflict. This court addresses the issue for the first time on this appeal. For purposes of our analysis, we define surveillance evidence as evidence that depicts the plaintiff engaged in activity inconsistent with his claimed disabilities. The majority view in New York, as well as in other jurisdictions where the issue has been decided, is that a plaintiff is entitled to pretrial examination of surveillance evidence which the defense intends to offer or use at trial. We agree with the majority view and direct the requested disclosure in this case.

The record on appeal is sparse. We do know that the lawsuit arises from an accident involving a single automobile. Accord-

ing to the complaint, the accident occurred at approximately 1:20 A.M. on January 26, 1989. The injured plaintiff, Gerald Kane, was a passenger in the vehicle which allegedly left the roadway and struck a utility pole causing him to sustain serious personal injuries. Mr. Kane is seeking compensatory damages in the sum of $5,000,000, claiming loss of earnings, impairment of future earning capacity, loss of enjoyment of life, and other damages. His wife, Carmel Kane, is seeking damages for loss of consortium in the sum of $500,000.

On or about January 12, 1990, the attorneys for the plaintiffs served a notice for discovery and inspection of various items including "any reports of surveillance or photographs taken of our clients". They subsequently moved to compel compliance with their discovery demand. In support of the motion, counsel argued that the plaintiffs have a right to examine the surveillance materials and to test them for authenticity.[1]

The defendants opposed the motion to compel on the ground that any surveillance evidence which may exist would constitute material prepared in anticipation of litigation, rendering it immune from disclosure absent a showing by the plaintiffs that they have a substantial need for the materials in the preparation of the case, and are unable without undue hardship to obtain the substantial equivalent of the materials by other means (see, CPLR 3101 [d] [2]). The defense counsel argued that the plaintiffs have no basis to claim undue hardship as a result of being denied access to any surveillance evidence that may exist because they can produce their own photographic or videotaped evidence. They argued further that the plaintiffs will not be able to claim surprise at trial because they have personal knowledge of what the injured plaintiff has been capable of doing since the date of the accident.

█ The Supreme Court denied the motion, implicitly rejecting the plaintiffs' argument that disclosure is necessary so that they can examine and perhaps test the photographic or videotaped evidence for authenticity prior to trial. The court

---

1. The scope of the plaintiffs' notice for discovery and inspection is somewhat ambiguous and may be read as requesting copies of any reports that may exist which were made by witnesses conducting surveillance of Mr. Kane. The motion to compel disclosure, and the argument by the plaintiffs on appeal, is limited to disclosure of photographs, motion pictures, or videotapes taken by means of surveillance. That is the only type of material addressed by this opinion.

held, in effect, that the plaintiffs had failed to establish the requisite need and hardship under CPLR 3101 (d) (2) that would warrant compelling the defendants to disclose the material prepared in contemplation of litigation. We disagree.

It is clear that surveillance films are relevant to the issue of damages in a personal injury action. The obvious reason for securing this type of film is to be able to destroy a plaintiff's credibility and to portray his or her claimed disabilities as being overstated and fraudulent. Indeed, films taken without the knowledge of the subject can have a dramatic impact in the courtroom, perhaps establishing the most critical facts in the entire case *(see, Boyarsky v G. A. Zimmerman Corp.,* 240 App Div 361, 364-365). The mere possibility that such evidence may exist "will often cause the most blatant liar to consider carefully the testimony he plans to give under oath" *(Snead v American Export-Isbrandtsen Lines,* 59 FRD 148, 150 [ED Pa]).

There is no question that surveillance material is evidence that may be used in the prosecution or defense of an action (CPLR 3101 [a]).[2] Nonetheless, we must consider whether this material should remain immune from disclosure because it was obtained by defense counsel in contemplation of litigation. The defendants contend that the conditional immunity must be respected in this type of case because otherwise, the injured plaintiff will be able to tailor his testimony at trial to effectively neutralize the evidence, thereby preventing the exposure of a fraudulent or exaggerated claim. We recognize that the element of surprise can have a prophylactic effect in preventing possible perjury, but that is not a sufficient reason to declare this type of relevant information immune from disclosure *(see, Martin v Long Is. R. R. Co.,* 63 FRD 53 [ED NY]). The competing interests presented by this appeal can be balanced and accommodated.

The Court of Appeals has held that the disclosure article

---

2. Photographic or videotaped evidence can be used for various purposes. In *Boyarsky v Zimmerman Corp.* (240 App Div 361, *supra),* the court held that surveillance films may be admissible in the discretion of the trial court, if properly authenticated, to impeach the plaintiff's credibility as to his claimed disabilities. In *Caprara v Chrysler Corp.* (71 AD2d 515, 522-523, *affd* 52 NY2d 114) motion pictures made on behalf of the plaintiff, and depicting his typical daily routine, were properly admitted at trial to prove the extent of his claimed injuries. In any case involving the introduction of photographic evidence, the court must be vigilant to guard against any tendency of the films to exaggerate any of the features they purportedly portray *(see, Mechanick v Conradi,* 139 AD2d 857, 858 [where the trial court properly excluded a potentially misleading videotape]).

(CPLR art 31) must be: "interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" *(Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403, 406). The purpose of liberal disclosure is "to ascertain truth and to accelerate the disposition of suits" *(Rios v Donovan,* 21 AD2d 409, 411). The examples that follow illustrate the application of these rules to advance the purpose of the disclosure article.

In *Totoritus v Stefan* (6 AD2d 123), a case in which the plaintiff sought a copy of his own statement made to the defendant's investigator, the defense resisted disclosure using the same arguments relied upon by the defense in this case. The case predates enactment of CPLR 3101 (e), which now permits a party to obtain his or her statement as a matter of right, and thus, the court was asked to weigh some of the same policy considerations before us in this case. The court ordered disclosure with the following observation, pertinent here as well: "While it is recognized that such discovery affords a party an opportunity to accommodate his testimony to the prior statement (assuming that the statement, as recorded, is an accurate one), it also provides an opportunity to the party to correct any inaccuracies or distortions that may have occurred in the recording of the statement. No generalization is safe which is based on any premise which assumes the integrity, or lack of it, either in the giving of the prior statement or in the recording thereof" *(Totoritus v Stefan, supra,* at 124).

The rule permitting a party to obtain a copy of his or her own statement appears to have been adopted for the first time in *Wilhelm v Abel* (1 AD2d 55). In *Wilhelm,* the Third Department overruled prior decisions that had precluded disclosure of a party's own statement absent special circumstances or a showing that fraud or deception had been practiced. The court observed that a change was needed to more quickly and fairly dispose of the volume of personal injury actions that were clogging the court's calendars, and noted, "[t]o accomplish these ends it has increasingly been the practice to eliminate any elements of surprise whenever practicable" *(Wilhelm v Abel, supra,* at 56).

This court applied the same policy considerations in *Zellman v Metropolitan Transp. Auth.* (40 AD2d 248), holding that the names of eyewitnesses in a personal injury action are

discoverable even though, once again, the information was obtained as a result of counsel's investigation: "We have reviewed our prior holdings and have now concluded that the names of eyewitnesses to the occurrence, even if obtained by investigation made after the occurrence, are discoverable if they are material and necessary to the prosecution or defense of the action. Prior holdings to the effect that the names of eyewitnesses may be regarded as things created by a party in preparation for litigation resulted from a strained construction of the statute. They represent an understandable effort to avoid allowing one party to benefit from the preparatory efforts of his opponent. Nonetheless, such constructions do violence to the stated policy of CPLR 3101 that there shall be full disclosure of all material and necessary evidence and serve to perpetuate the 'sporting theory of justice'. Justice is better served, the trial of cases expedited and the possibilities of perjury concomitantly reduced if there is disclosure of the names of eyewitnesses to be called. This does not, of course, apply to the statements of such witnesses, for they are truly material prepared for litigation" *(Zellman v Metropolitan Transp. Auth., supra,* at 251). This court's reasoning in *Zellman* was extended to the identification of notice witnesses in *Zayas v Morales* (45 AD2d 610; *see also, Hoffman v Ro-San Manor,* 73 AD2d 207).

The discoverability of surveillance evidence was addressed for the first time by an appellate court in New York in *Marte v Hickok Mfg. Co.* (154 AD2d 173). In *Marte,* the First Department held that surveillance evidence which the defense intends to offer at trial must be produced for pretrial inspection by the plaintiff. The court concluded that the plaintiff's need to verify the accuracy of the visual evidence outweighs the defendant's need to maintain secrecy, noting: "[V]isual reproductions may not always provide a correct picture of what they purport to depict since they are subject to manipulation. Lighting, camera angles, distances and speed can all be shaped by the photographer to suit a particular purpose, and visual reproductions can, moreover, be edited and spliced, and images superimposed on each other. Thus, the possibility that a plaintiff would be less likely to perjure him or herself where visual reproductions are excluded from discovery must be counterbalanced by the abuse which can occur when such reproductions are withheld, and plaintiff is deprived of adequate time and opportunity to examine the accuracy of the

photographs, videotapes or movies in question" *(Marte v Hickok Mfg. Co., supra,* at 176).

The First Department in *Marte (supra)* rejected the defense claim that surveillance evidence constitutes an attorney's "work product". However, the court did not address whether such evidence constitutes material prepared in anticipation of litigation. Instead, the court relied upon *Saccente v Toterhi* (35 AD2d 692), a case holding that photographs of an injured infant plaintiff taken by an investigator four days after the accident giving rise to the lawsuit were a form of visual or photographic statement of a party, discoverable as a matter of right under CPLR 3101 (e). The court followed the reasoning adopted in *Saccente* and allowed the plaintiff to examine the surveillance evidence because the result "is [more] consonant with the modern trend toward allowing full disclosure and construing narrowly limitations, particularly where no prejudice is shown" *(Saccente v Toterhi, supra,* at 692; *Marte v Hickok Mfg. Co., supra,* at 177).

The First Department also addressed the legitimate defense concern about allowing the plaintiff to tailor his or her testimony by allowing disclosure to be delayed until the party who obtained the surveillance evidence has had an opportunity to fully depose the opposing party about the claimed disabilities. In this way, the defense can fully explore and memorialize any inconsistencies between the plaintiff's claims and the surveillance materials prior to making the evidence available for inspection *(see also, Jenkins v Rainner,* 69 NJ 50, 350 A2d 473).

In *DiMichel v South Buffalo Ry. Co.* (178 AD2d 914), the Fourth Department agreed that disclosure is appropriate because of the plaintiff's need to test the visual evidence for accuracy. The court concluded that such evidence does not constitute a statement discoverable as a matter of right under CPLR 3101 (e). However, the court held that the plaintiff met the requirements for discovery of trial preparation material under CPLR 3101 (d) (2) by establishing that he has a substantial need for the materials in the preparation of the case, and is unable without undue hardship to obtain their substantial equivalent by other means.[3]

3. The First Department's holding in *Marte (supra)* did not establish a rule permitting discovery of surveillance evidence as a matter of right pursuant to CPLR 3101 (e). In *Cleary v City of New York* (177 AD2d 283), the First Department affirmed an order compelling disclosure of surveil-

Two dissenting Justices in *DiMichel (supra)* agreed that surveillance evidence constitutes material prepared for litigation but disagreed that the plaintiff had met the requirements for disclosure under CPLR 3101 (d) (2). In the dissenters' view, the plaintiff's concerns about the accuracy of the visual evidence could be addressed at trial in the usual way, by voir dire, cross-examination, and rebuttal. Thus, they determined that the plaintiff did not demonstrate "substantial need" which, they observed, requires more than a showing that the material would be helpful or useful in preparing for trial.

In *Careccia v Enstrom* (174 AD2d 48),[4] the Third Department held that the plaintiff had failed to meet the burden of proving the elements necessary to compel disclosure of surveillance videotapes obtained at the direction of defense counsel. The court's analysis was similar to that adopted by the dissenters in *DiMichel:* "The record in this case contains nothing to show that a pretrial examination or testing of the videotapes would reveal anything relevant to their authenticity or accuracy that could not be revealed through ordinary trial tactics, such as voir dire and cross-examination of the person who made the videotapes. Nor is there anything in the record to show that when the request for the videotapes was made plaintiff's condition had changed to such a degree that he could no longer produce a videotape that would be a substantial equivalent of those obtained by defendant *(cf., Barber v Town of Northumberland,* 88 AD2d 712)" *(Careccia v Enstrom, supra,* at 51).

The Third Department was unwilling to adopt the view that the requirements for disclosure under the statute are inherent in the very nature of the visual evidence because such a

---

lance evidence, holding: "[I]n view of the fact that non-disclosure of surveillance videotapes in defendants' possession would place plaintiffs at hardship to duplicate the films and/or to authenticate the films, special circumstances exist warranting the IAS court's exercising its discretion to grant plaintiffs' motion to compel disclosure of the surveillance videotapes". The court did not refer to CPLR 3101 (d) (2), but did apply the standard for ordering disclosure under that section. Thus, the Fourth Department holding which we are adopting today appears to be the rule applied in the First Department as well.

4. The appeal in *Careccia* was from an order of the Supreme Court, Rockland County, transferred from this court to the Third Department. Since this court had not yet ruled on the issue at bar, the Third Department adopted its own rule. The contrary view we adopt in this case, which is the rule in the First and Fourth Departments, will govern transferred appeals, which originate in the Second Department, in the future unless the Court of Appeals rules otherwise *(see, Matter of Doyle v Amster,* 79 NY2d 592).

conclusion, in the court's opinion, "would effectively rewrite the statute to create another exception to the rule governing material prepared for litigation *(see,* CPLR 3101 [d] [1]), which is the function of the Legislature, not the courts" *(Careccia v Enstrom, supra,* at 51).

We agree with the analysis by the majority of the Fourth Department in *DiMichel v South Buffalo Ry. Co. (supra).* Although surveillance evidence constitutes material obtained in preparation for litigation, its protected status is overcome here by the plaintiffs' substantial need to verify the accuracy of the potentially devastating films prior to trial *(see also, Cleary v City of New York,* 177 AD2d 283, *supra; Prewitt v Beverly-50th St. Corp.,* 145 Misc 2d 257). In our view, the traditional methods for raising objections to the admissibility of photographs, or other physical evidence, at the time of trial, such as voir dire and cross-examination, are inadequate to afford a plaintiff a reasonable opportunity to contest the accuracy of the surveillance films, and if necessary, to develop rebuttal evidence. A plaintiff would clearly be put to an unfair disadvantage if, for the first time at trial, he or she is confronted with a distorted film that devastates his or her entire case *(see, Jenkins v Rainner,* 69 NJ 50, 350 A2d 473, *supra).* The trial would have to be interrupted, at a minimum, to allow the court and counsel to examine the material outside the jury's presence. Additionally, a continuance might have to be granted to allow the plaintiff to have the materials tested by an expert. This type of disruption can and should be avoided by disclosing the evidence prior to trial *(see, Martin v Long Is. R. R. Co.,* 63 FRD 53, 54).[5]

Although it is possible that a plaintiff will attempt to tailor his or her testimony after learning what the surveillance films reveal, it seems unlikely that he or she would risk going to

5. The Uniform Rules for Trial Courts exercising civil jurisdiction in New York (22 NYCRR part 202), establish detailed procedures for conducting videotaped depositions and assuring the accuracy of the films *(see,* 22 NYCRR 202.15). The court is required, *inter alia,* to rule on any objections prior to the date set for trial, and the original and any edited version required by the court's ruling must then be filed with the clerk of the court upon any party's request (22 NYCRR 202.15 [g]). The use of videotaped evidence is becoming more commonplace in civil trials, especially those involving medical witnesses *(see,* CPLR 3117 [a] [4]). The use of surveillance films is also likely to increase as technology improves and recording equipment becomes more affordable. It is clearly desirable to have any questions about the accuracy of the films resolved before the trial along the lines adopted under the Uniform Rules.

trial knowing that the films are accurate, and can establish that he or she may be attempting to perpetrate a fraud. We believe it is more likely that disclosure will result in a settlement, or possibly a voluntary discontinuance of the lawsuit, in either case avoiding costly and time consuming litigation. In a case where the inconsistencies are minor or can reasonably be explained, disclosure should insure that the trial, if one becomes necessary, will be as fair as possible. Our adversary system operates most effectively when the parties are aware of all the facts. All of these factors persuade us that the plaintiffs here have a "substantial need" for the material in the preparation of their case *(see, Jenkins v Rainner, supra)*.

■ We also conclude that the plaintiffs satisfy the second requirement for disclosure because it is apparent that they cannot obtain the "substantial equivalent" of the materials by any reasonable means. The plaintiffs have no way of recreating the surveillance film unless they see it since they cannot know what activities the camera may have captured or when the films were made. Photographic evidence is unique because the conditions that existed at the time the films were made are almost never the same. Thus, in *O'Connell v Jones* (140 AD2d 676) this court ordered the plaintiff to turn over to the defendants copies of photographs taken at the accident site three days after the occurrence. Although the photographs constituted trial preparation materials and were conditionally immune from disclosure, this court concluded that they could no longer be duplicated because of a change of conditions, and accordingly, withholding them would result in unjust or undue hardship *(see also, Chakmakjian v NYRAC, Inc.,* 154 AD2d 644).

Nor can we agree with the conclusion of the dissenters in *DiMichel v South Buffalo Ry. Co.* (178 AD2d 914, *supra),* that other evidence available to the plaintiffs on the issue of damages, such as expert medical testimony and testimony by witnesses familiar with the injured plaintiff's daily activities, constitute the substantial equivalent of the surveillance evidence.

Disclosure in the instant case is consistent with New York's statutory scheme, and case law interpreting the scope of the conditional immunity accorded trial preparation materials. The protection for such material is to be distinguished from the absolute immunity extended to an attorney's "work prod-

uct" under CPLR 3101 (c). That provision is narrowly construed to include only those materials prepared by the attorney, acting as an attorney and containing his or her trial strategy *(see,* 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.44). Surveillance materials clearly do not constitute an attorney's work product *(Marte v Hickok Mfg. Co.,* 154 AD2d 173, *supra).*

The current version of CPLR 3101 (d), although enacted as part of a comprehensive revision of the laws governing medical malpractice actions generally, applies to all other types of action as well *(see,* L 1985, ch 294). While the law expands the rights of litigants to obtain information about the identity and substance of expert testimony, it is also designed to permit greater disclosure of trial preparation materials than under prior law. As indicated in the 1985 Report of the Advisory Committee on Civil Practice, new subdivision (d) (2) is patterned after the Federal rule *(see,* Fed Rules Civ Pro, rule 26 [b] [3]) and can be interpreted in light of Federal decisions *(see,* 1985 Report of Advisory Committee on Civil Practice, in 7th Ann Report of Chief Adm'r of Cts of State of NY, at 48-49).

Under the Federal Rules of Civil Procedure, as under the CPLR in New York, all information that is relevant to the pending controversy should be disclosed unless privileged or immune *(see,* Fed Rules Civ Pro, rule 26 [b] [1]). The majority of Federal cases construing the scope of the immunity for trial preparation materials *(see,* Fed Rules Civ Pro, rule 26 [b] [3]), hold that surveillance evidence must be disclosed *(see, Forbes v Hawaiian Tug & Barge Corp.,* 125 FRD 505 [D Haw]; *Daniels v National R. R. Passenger Corp.,* 110 FRD 160 [SD NY]; *Martin v Long Is. R. R. Co.,* 63 FRD 53 [ED NY], *supra; Blyther v Northern Lines,* 61 FRD 610 [ED Pa]; *Snead v American Export-Isbrandtsen Lines,* 59 FRD 148 [ED Pa], *supra; but see contra; Bogatay v Montour R. R. Co.,* 177 F Supp 269 [WD Pa]; *Hikel v Abousy,* 41 FRD 152 [D Md]). Other States which, like New York, have adopted the language of the Federal rule with respect to trial preparation materials also generally require disclosure of surveillance evidence *(see, Jenkins v Rainner,* 69 NJ 50, 350 A2d 473, *supra; Zimmerman v Superior Ct.,* 98 Ariz 85, 402 P2d 212; *Cabral v Arruda,* 556 A2d 47 [Sup Ct, RI]; *see also,* Annotation, *Photographs of Civil Litigant Realized by Opponent's Surveillance as Subject to Pretrial Discovery,* 19 ALR4th 1236, and cases cited therein). For all the reasons just stated, we conclude that the plaintiffs' need to examine the materials prior to trial overrides any legitimate

interest in preventing disclosure *(see, Dodson v Persell,* 390 So 2d 704 [Sup Ct, Fla]; *Cabral v Arruda, supra).*

Finally, we address the defense's legitimate concern about the injured plaintiff tailoring his testimony by delaying disclosure until depositions on the claimed disabilities are completed. Although it appears that the injured plaintiff has already been deposed in this case, we cannot tell from the record whether the defense has had a sufficient opportunity to examine him with regard to the claimed disabilities and to explore any inconsistencies that the films may reveal.

Under the circumstances, the defendants should be required to disclose first, whether any surveillance films exist, and whether or not any films that may exist are intended to be offered as evidence or otherwise used at trial *(see, Dodson v Persell, supra,* at 707). Secondly, if the materials are to be presented or used at trial, they must be produced for examination by the plaintiffs. Such disclosure should be made within 30 days after service upon the defendants of this opinion and order, subject to leave to the defendants, if they be so advised, to apply to the trial court within that period for an extension of time to conduct a further deposition of the injured plaintiff with respect to his claimed disabilities.

THOMPSON, J. P., MILLER and COPERTINO, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, the facts, and as an exercise of discretion, without costs or disbursements, that branch of the plaintiffs' motion which was to compel compliance with their notice for discovery and inspection is granted in accordance herewith, and the defendants' time to comply with the foregoing is extended until 30 days of service upon them of a copy of this decision and order, with notice of entry.