OPINION OF THE COURT
John A. Milano, J.,
In this bifurcated trial on the issue of damages, a former *858 jury having previously determined the issue of liability, plaintiffs’ attorney moves the court to permit the use of six surveillance videotapes in behalf of the plaintiffs’ direct prima facie case, taken and recorded on various days in September 1992, approximately three years after the date of the occurrence regarding the use and operation of the defendant’s motor vehicle and the plaintiff who was struck thereby while a pedestrian.
Prior to the opening to the jury, plaintiffs’ attorney made an application to the court pursuant to CPLR 3120 for an order permitting him and the plaintiffs to inspect and view the surveillance videotapes. The defendant’s attorney had given recent notice of his intention to use said tapes in defense of the action.
Under the precedent of the Appellate Division, Second Department’s ruling in the case of (Kane v Her-Pet Refrig., 181 AD2d 257 [2d Dept 1992]), this court granted the application and directed the defendant’s attorney to produce the tapes at his office and permit plaintiffs’ attorney and the plaintiffs to view the tapes prior to the opening of the damages phase of this bifurcated trial.
The Kane case’s (supra) holding was to the effect that surveillance evidence is discoverable and that although said evidence constitutes material prepared for litigation, said material’s conditional immunity is overcome by the plaintiffs’ need to verify the accuracy of the materials before trial.
Decisions on the issue of the right to access and review of surveillance videotapes, by the plaintiff, has been handed down in various decisions by our sister Appellate Divisions. In Marte v Hickok Mfg. Co. (154 AD2d 173 [Mar. 15, 1990]), the First Department held that surveillance evidence must be produced for pretrial inspection by the plaintiff. The Court held that such material is a form of visual or photographic statement of a party discoverable as a matter of right under CPLR 3101 (e). In Careccia v Enstrom (174 AD2d 48 [Jan. 16, 1992]), the Third Department held that plaintiffs should not have access to defense surveillance materials prepared for trial. That Court believed that ordinary trial tactics such as voir dire and cross-examination should be adequate to test authenticity and accuracy of tapes and photos.
In DiMichel v South Buffalo Ry. Co. (178 AD2d 914 [Dec. 26, 1991]), the Fourth Department in a split decision, three to two, held that disclosure is appropriate because of a plaintiff’s *859 need to test the visual evidence for accuracy. The ruling was appealed to the Court of Appeals.[1]
In the instant case, plaintiffs’ attorney, after calling as witnesses the plaintiff and her husband, now moves this court pursuant to CPLR 3101 (a) and CPLR 3101 (d) (2) for permission to use the six surveillance videotapes as part of the plaintiffs’ direct prima facie case stating that the disclosed and inspected tapes are evidence, material, necessary and relevant, and admissible irrespective of the burden of proof. Further, that plaintiffs should be given the opportunity to explain the ramifications and conclusions revealed in the tapes to the jury.
Defendants’ attorney opposes the motion on the grounds that the plaintiff cannot, from a practical sense, authenticate the surveillance tapes without laying a proper foundation available only to the private investigator who recorded the said physical activities of the plaintiff; further, that this is material prepared by and for the use of the defendant only, in anticipation of litigation; that the right conferred upon the plaintiffs to inspect the said tapes is based on a condition of immunity spelled out in CPLR 3101 (d) (2), to avoid hardship and surprise and to enable plaintiffs to verify and rebut the said evidence after and not before the defendants have had the opportunity, if they should so decide, to show the tapes to the jury as part of their defense, on the issue of the extent of claimed injuries on the part of the plaintiffs. Further, that disclosure pursuant to the provisions of CPLR 3101 (d) (2) does not entitle the plaintiff to a carte blanche use of the tapes for their own purposes irrespective of the burden of proof.[2]
The issue before the court, as to whether the plaintiffs’ *860 attorney may use the said surveillance videotapes for his own use on his prima facie direct case is apparently an issue of first impression. CPLR 3101 (a) states: "[t]here shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof.” CPLR 3101 (d) (2) states: "Subject to the provisions of paragraph one of this subdivision, material otherwise discoverable under subdivision (a) of tins section and prepared in anticipation of litigation or for trial by or for another party, or by or for that other party’s representative (including an attorney, consultant, surety, indemnitor, insurer or agent), may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the material by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.”
*859 "[T]f accurate and authentic, a surveillance film that undercuts a plaintiff’s claims of injury may be devastatingly probative,” the Court said in a unanimous opinion by Chief Judge Sol Wachtler (DiMichel v South Buffalo Ry. Co., 80 NY2d 184, 193). "At the same time, however, film and videotape are extraordinarily manipulable media,” (supra, at 193) and the plaintiff must be allowed to test their authenticity before they are shown to a jury.
*860 In the case of Kane (supra), the Appellate Division, Second Department, agreed with the analysis by the majority of the Fourth Department in DiMichel v South Buffalo Ry. Co. (supra); that although surveillance evidence constitutes material obtained in preparation for litigation, its protected status is overcome by the plaintiffs’ substantial need to verify the accuracy of the potentially devastating films prior to trial.
The Court went on to state: "In our view, the traditional methods for raising objections to the admissibility of photographs, or other physical evidence, at the time of trial, such as voir dire and cross-examination, are inadequate to afford a plaintiff a reasonable opportunity to contest the accuracy of the surveillance films, and if necessary, to develop rebuttal evidence. A plaintiff would clearly be put to an unfair disadvantage if, for the first time at trial, he or she is confronted *861 with a distorted film that devastates his or her entire case (see, Jenkins v Rannier, 69 NJ 50, 350 A2d 473, supra). ” (Kane v Her-Pet Refrig., 181 AD2d 257, 265, supra.)
Thus, the basis for disclosure is to avoid surprise, verify accuracy, and avoid unjust or undue hardship. But there is nothing in the Kane decision (supra), or in the various decisions of the Appellate Divisions, concerning the issue of disclosure in regard to litigation materials, that helps this court to decide whether plaintiff has a right to use the surveillance videotapes for his own use on direct prima facie case. Insofar as the plaintiffs are concerned, this court has adhered to and complied with the "conditional immunity” provisions of CPLR 3101 (d) (2) as interpreted by the decision of Kane (supra).
In so doing, this court firmly believes that this is as far as the plaintiffs can go pursuant to the said CPLR section. Further the evidence contained in the said tapes, although relevant to the issues in the instant case, is not material and necessary to the prosecution of the plaintiffs’ damages action but notwithstanding the plaintiffs’ attorney has not demonstrated same in his arguments. Finally, without statutory or case law precedents, this court will not rewrite the pertinent statute to create yet another exception to the rule governing materials prepared for litigation, which is the function of the Legislature and not the courts.
Accordingly, plaintiffs’ application is denied.

. Resolving a question that has "fragmented” the four Appellate Divisions in personal injury cases, the Court of Appeals ruled on October 20, 1992 that defense surveillance films made to undermine a plaintiff’s injury claims must be disclosed before trial.

. In the companion personal injury case also decided by the Court of Appeals, Poole v Consolidated Rail Corp. (80 NY2d 184), the Court ordered a new trial in Poole, which had produced a $4.2 million jury verdict for the plaintiff, in large part because of his attorney’s trial tactics. The trial court had ordered disclosure of all surveillance materials, which the Fourth Department found to be harmless error. *860 The defense did not introduce any of the films at the trial, and the plaintiffs attorney theorized before the jury that this was because the films would support the plaintiffs case. Judge Wachtler said these tactics effectively "unravel the compromise we have crafted today” and "undermined the ultimate fairness of this trial.” (Poole v Consolidated. Rail Corp., 80 NY2d, at 198, 199, supra.)
The Court held as a matter of law that if the defense decides after disclosure not to use its films at trial, "the plaintiff cannot turn this strategy to his or her advantage and comment on this decision to the jury.” (Supra, at 199.)