Mollie Ann **DUNN**, Plaintiff,

v.

**STATE FARM FIRE & CASUALTY COMPANY**, Defendant.

No. WC87–39–NB–D.

United States District Court, N.D. Mississippi, W.D.

Sept. 26, 1988.

Grady F. Tollison, Jr., Oxford, Miss., for plaintiff.

Guy T. Gillespie, Oxford, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

The court has before it State Farm's motion to review the Magistrate's order to compel production of documents State Farm and its attorneys prepared. Having reviewed the magistrate's opinion, examined the documents in question, and read the parties' submissions, the court is in a position to rule on the merits.

### I.

On February 3, 1986, Melvin and Mollie Dunn's house burned and the following day Mr. Dunn filed a claim for the loss with State Farm. On February 5, 1986, State Farm sent an adjuster to investigate the cause of the fire. After the adjuster found what he considered suspicious circumstances, he asked an arson specialist to inspect the house. On February 10, 1986, the adjuster learned from the New Albany police department that Melvin Dunn had signed a written statement in which Dunn admitted he intentionally burned his house. Within a week, State Farm retained attorneys to advise it concerning the company's legal obligations to the Dunns and State Farm continually communicated with its attorneys while it adjusted the Dunn's claim. State Farm denied the claim in August, 1986 and Mollie Dunn filed this suit alleging State Farm denied her insurance claim in bad faith.

During the course of discovery, Mollie Dunn asked State Farm to produce the documents State Farm and its attorneys prepared before Mollie Dunn filed suit. State Farm moved to quash Mollie Dunn's subpoena asserting that some of the documents were privileged or were attorneys' work product. Mollie Dunn argued that she is entitled to all factual information contained in the documents. The magistrate found that several of these documents were prepared while State Farm's attorneys were advising State Farm on the Dunn's claim. The magistrate reasoned that the attorneys were acting as investigators in the normal course of business of an insurer, and, therefore, the documents were not the result of an attorney's work product in the sense of that term making work product immune from discovery. After reaching this conclusion, the magistrate struck portions of the documents which contained legal advice and opinions and or-

dered State Farm to produce most of the documents. State Farm appealed the magistrate's ruling and the issue before the court concerns the breadth of the attorney-client privilege and the work product doctrine.

## II.

The attorney-client privilege protects communications made to an attorney by his client. The privilege exists to ensure a client fully informs his attorney and thus enables the attorney to provide sound legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584, 591 (1981). "Whenever legal advice of any kind is sought from a professional legal advisor, *the communications relevant to that purpose* made in confidence by the client are, at the instance of the client, permanently protected." *Wonneman v. Stratford Securities Co.*, 23 F.R.D. 281, 285 (S.D.N.Y.1959) (emphasis added) (quoted in *Diversified Industries, Inc. v. Merideth*, 572 F.2d 596, 602 (8th Cir.1977)). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney...." *Upjohn Co. v. United States*, 449 U.S. at 395, 101 S.Ct. at 685, 66 L.Ed.2d at 595. Accordingly, the privilege only protects the manner, extent, and the occasion of the factual disclosure. Thus:

> The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact merely because he incorporated a statement into his communication to his attorney.

*Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962) (quoted in *Upjohn v. United States*, *supra*).

"[R]ecognition that the privilege is essential to the lawyer's role creates tension between the privilege and discovery which requires disclosure of relevant facts within the attorney's knowledge." *In re LTV Securities Litigation*, 89 F.R.D. 595, 600 (N.D.Texas 1981). In order to help relieve this tension, the attorney-client privilege "is construed no more broadly than is necessary to effectuate its purpose." *Supra.*

■ Clients are entitled to expect attorneys to hold their communications in confidence even though the client asks his attorney to perform related, but not strictly professional, tasks. Thus, an attorney does not divorce himself from his profession by performing tasks other than giving legal advice and the client does not waive the privilege by asking the attorney to perform related work. In *In re LTV Securities Litigation*, 89 F.R.D. 595 (N.D.Texas 1981), the government sought documents which an attorney prepared while performing an investigative function. The government argued that the attorney prepared the documents in the normal course of business and concluded that the documents were not privileged. The court disagreed:

> Information gathered in such a manner as to be privileged does not become discoverable solely because management makes business use of the information.... [The attorney] ... conducted [his] investigation with the purpose of using the findings as a foundation from which 'to evaluate and draw conclusions as to the propriety of past actions and to make recommendations for possible future courses of action.' *See Diversified Industries, Inc. v. Merideth*, 572 F.2d 596, 610 (8th Cir.1978). Moreover, while in-house accountants or lay investigators could have been employed to investigate the events in question, neither would have brought to bear the same training, skills and background necessary to make the professional independent analysis and legal recommendations sought by ... [the client].

*Id.* at 601 (cite omitted).

■ An attorney can play an important role in adjusting an insurance claim, especially since an insurer can be assessed punitive damages for ignoring its legal obligations to the insured. *See Bankers Life and Casualty Co. v. Lloyd Crenshaw*, 483 So.2d 254 (Miss.1986), *aff'd*, 486 U.S. ——, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). State Farm retained attorneys to ascertain its legal obligations to the Dunns; conse-

quently, any communication between State Farm and its attorneys is privileged. State Farm did not waive the attorney-client privilege by assigning its attorneys investigative tasks and the privilege includes more than legal advice and opinions. The court has thoroughly examined the documents State Farm supplied Mollie Dunn and finds that State Farm has divulged the factual information discussed in the correspondence. Mollie Dunn is not entitled to discover the extent and occasion of these communications.

## III.

■ Like the attorney-client privilege, the work product doctrine, codified in Fed. R.Civ.P. 26(b)(3), does not protect disclosure of facts to opposing counsel. The work product doctrine insulates a lawyer's research, analysis, legal theories, mental impressions, notes and memoranda of witnesses' statements from an opposing counsel's inquiries. *Upjohn Co. v. United States,* 449 U.S. at 400, 101 S.Ct. at 688, 66 L.Ed.2d at 598; *United States v. El Paso Co.,* 682 F.2d 530, 543 (5th Cir.1982), *reh'g denied,* 688 F.2d 840 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473. "The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation.... Excluded from the work product materials ... are 'materials assembled in the ordinary course of business....' Litigation need not be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. *United States v. Davis,* 636 F.2d [1028] at 1040 [ (5th Cir. 1981) ]." *United States v. El Paso Co.,* 682 F.2d at 542.

■ Often when an insurer denies a claim, the insured files a suit in which he asserts a bad faith claim against the insurer. Thus, whenever an insurer has a general suspicion about a claim which gives the insurer reason to believe it will deny the claim, the insurer may anticipate litigation. Because Mississippi courts scrutinize the acts of an insurer, insurance companies retain counsel to help evaluate the claim

and advise the insurer whether the insurer has an arguable reason to deny the claim. As such, an attorney helps adjust the claim and becomes a part of the regular course of the insurer's business. "At some point, however, an insurance company's activity shifts from mere claims evaluation to strong anticipation of litigation." *Carver v. Allstate Insurance Co.,* 94 F.R.D. 131, 134 (S.D.Ga.1982). "Prudent parties anticipate litigation prior to the time suit is formally commenced." 8 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2024 (1970). When the insurer has knowledge of specific and articulable facts which give it a reasonable suspicion about the validity of the claim, the insurer can assume litigation is imminent. When this occurs, the attorney's role changes from a legal adviser to the insurer's adjusting process to a barrister preparing for a lawsuit. The insurer must demonstrate when this point in time was reached by showing when it was aware of specific and articulable facts which made it suspicious of the insured's claim.

■ State Farm received notice of the Dunn's fire loss on February 4, 1986. On February 5, 1986, Melvin Dunn signed a confession in which he admitted he intentionally set fire to his house. State Farm's adjuster learned of the confession on February 10, 1986, from the New Albany Police Department and within a week State Farm retained attorneys. When State Farm retained its attorneys, Dunn's confession gave State Farm an articulable reason to question the Dunns' insurance claim; thus, from the date they were hired, State Farm's attorneys could anticipate litigation. As a result, those documents the attorneys prepared or had prepared at their behest are protected as work product. Attorneys' notes and case summaries reveal an attorney's mental processes in evaluating the strengths and weaknesses of a lawsuit and are equally protected as work product. *Upjohn v. United States,* 449 U.S. at 401, 101 S.Ct. at 688, 66 L.Ed.2d at 599.

■ State Farm, however, cannot claim work product protection for all documents it prepared in adjusting the Dunns' insur-

ance claim. C. Wright and A. Miller, *Federal Practice and Procedure* § 2024 (1970). Protection is afforded to those documents prepared by agents of an attorney because an attorney must rely on the assistance of others in preparation for trial. Consequently, documents prepared by State Farm for its attorneys are subject to protection. *United States v. Nobles*, 422 U.S. 225, 238–239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141, 154 (1975). State Farm, however, seeks protection of the report of its claims committee which finally evaluated the Dunn's insurance claim. State Farm argues evaluation by a claim committee is not a routine part of State Farm's adjusting process and the report was prepared after litigation was imminent. Work product, however, only protects documents produced *by* or *for* an attorney preparing for litigation. The claims committee report may not be the routine *manner* in which State Farm evaluated claims, but adjusting claims is normal business of an insurance company. Except for the portions of the report which recite the attorney's evaluation of the claim, the claims' committee report is subject to discovery.

Since many of the documents Mollie Dunn sought are subject to work product protection, it is incumbent upon her to demonstrate a "substantial need of the materials in the preparation of ... [the plaintiff's] case and that ... [she] is unable without undue hardship to obtain the substantial equivalent of the material by other means." Fed.R.Civ.P. 26(b)(3). Mollie Dunn has neither explained to the court why she needs these documents nor has she shown that she does not have the means to obtain the information contained in the documents. The court has reviewed the documents State Farm has produced and the documents subject to work product protection and finds that disclosure of these documents would only provide Mollie Dunn with opposing counsel's evaluation of her case. Consequently, the documents State Farm's attorneys prepared in anticipation of trial will remain protected.

An order in accordance with this memorandum opinion will issue.

## ORDER

In accordance with the memorandum opinion issued this day, the order of the magistrate issued in this action on June 15, 1988 will be sustained in part and overruled in part. It is therefore ORDERED:

1. That defendant State Farm Fire & Casualty Company will produce to the plaintiff the following documents within ten days:

(a) Document 100064–100069—entire exhibit except section V and the third paragraph in section VI on page 100069;

(b) Document 100070–100075—entire exhibit except for section V and the third paragraph in section VI on page 100075; and

(c) Document 100092–100093—entire exhibit.

2. That the following exhibits fall within the attorney-client privilege and are immune from discovery:

(a) Document 100076–100086—entire exhibit except references to attorney-client communications; and

(b) Documents 100090–100091, 100098–100099, 100102, 100104, 100106, 100110, 100117, 100120, 100163, 100168–100169, 100170, 100173, 100176, 100189, 100195, 100200, 100201, 100231, 100232, 100239, 100240, 100250, 100253, 100254, 100255, 100266, 100276, 100280, 100293, 100301, 100301, 100306, 100315, 100538, 100644, 100645, 100650–100658, 100661, 100663, 100701, 100702–100703, 100704, and 100709–100721.

3. That the following documents are protected as attorney work product:

Documents 100039–100051, 100054–100061, 100667–100697, 100705–100708, and 100709–100721.