Thomas **FISHER**, Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION**, Defendant.

No. IP 92–807–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 2, 1993.

Frank E. Van Bree, Georgetown, IN, Daniel J. Downes, Chicago, IL, for plaintiff.

Victor L. Frost, II, Frost and Hugon, Indianapolis, IN, for defendant.

### ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER AND DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

TINDER, District Judge.

Plaintiff asks the court to reconsider the previous order which denied Plaintiff's August 2, 1993 Motion to Compel Discovery and to now grant the Motion, compelling Defendant to produce certain surveillance videotapes and to respond to supplemental discovery. For the reasons stated below, Plaintiff's Motion to Reconsider will be granted and his Motion to Compel will be denied. Further, Plaintiff will not be granted leave to file the supplemental discovery requests.

### I. *Factual and Procedural History*

Plaintiff sues under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60 (West 1986), for injuries suffered in the course of his employment with Defendant Consolidated Rail Corporation. As is common in these actions, Defendant began' surreptitious surveillance of Plaintiff's activities after suit was filed. The purpose of the surveillance is to obtain evidence of the Plaintiff performing physical activities inconsistent with his alleged injuries which would be used to impeach Plaintiff at trial. At least a portion of this surveillance, conducted by private investigators hired by Defendant, was memorialized in the form of videotapes which Defendant or Defendant's attorney now possesses.[1] As the litigation progressed, Plaintiff propounded Plaintiff's Interrogatories and Request for Production to Defendant in June, 1992. Contained in this discovery request were the following interrogatories:

7. State whether any photographs, slides, video or motion pictures were taken of the plaintiff, of physical objects, or of the scene of the alleged occurrence, and if so: (a) for each, identify the subject matter, the number taken and the dates they were taken; and (b) state the name and last known address of the photographer and the names of any other persons present when they were taken.

8. State whether there has been surveillance of the plaintiff's activities from the date of the alleged occurrence to the present; and, if so state: (a) the names and last known addresses of the person conducting said surveillance and the dates said surveillance was conducted; and (b) whether defendant is in possession of surveillance reports, and if so, the date or dates of said report; and (c) whether defendant is in possession of photographs, slides, video or motion pictures depicting plaintiff's activities, and if so, the dates said were taken.

Pl's. Interrogs. to Def. at 3–4. In the Request for Production, Plaintiff sought "[a]ll photographs, slides, video or motion pictures taken subsequent to the alleged occurrence of the plaintiff, the vehicles or other physical objects involved or of the scene of the alleged occurrence." Pl's. Req. for Produc. at 2.

Defendant objected to both the interrogatories and the requests for production. Specifically, in each instance Defendant objected because the requests sought to discover trial preparation materials, stating:

Defendant, by counsel, objects to interrogatories Nos. 7 and 8 [and request for production] insofar as they seek information concerning surveillance, if any, of Plaintiff following his alleged accident. Any such

---

1. While Defendant never explicitly stated that videotapes other than the one which was produced exist, it seems reasonable to infer from the circumstances of this case the existence of additional, unproduced videotapes. For one thing, Defendant would have no reason to resist Plaintiff's motion to compel if there was nothing to produce. Further, Defendant maintains that it may, after taking an update deposition of the Plaintiff, decide to use (and consequently produce) other videotapes, further indicating the existence of more videotape than the one already produced.

inquiry has the effect of improperly attempting to discover the trial preparation materials of Defendant and its attorneys. Additionally, investigative surveillance of Plaintiff, if any, constitutes impeachment evidence which is not discoverable. S.D.Ind.LR 16.1(f)(5) and (7). Without waiving the foregoing objections, Defendant agrees to answer interrogatories Nos. 7 and 8 [and request for production] after it has taken Plaintiff's deposition. *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa.1973).

Def's. Answer to Interrogs. at 14–15; Def's. Resp. to Req. for Produc. at 2–3. Plaintiff accepted this objection and awaited his deposition. After taking Plaintiff's deposition, Defendant produced on July 1, 1993 a single videotape of surveillance taken on February 13, 1990, along with the name and address of the investigator conducting the surveillance. This tape, Defendant states, is the only tape it intends to introduce as evidence at trial. However, Defendant added a caveat to this statement, disclosing that it intended to take an update deposition of Plaintiff closer to trial and reserving the right to designate other videotape for use at trial after that deposition. Desiring that Defendant produce all surveillance videotapes of him, not merely those to be used at trial, Plaintiff moved, pursuant to Federal Rule of Civil Procedure 37(a), to compel Defendant to respond to his requests for production and interrogatories.[2] Additionally, Plaintiff sought leave to file supplemental discovery requests which, among other matters, request additional surveillance material (in the form of written surveillance reports) possessed by Defendant. On August 3, 1993, the court denied

Plaintiff's Motion to Compel because Plaintiff failed to comply with Local Rules 26.2 and 37.1 of this court, in that he failed to attach all supporting documentation to his motion to compel and failed to inform the court that he had attempted to settle this discovery dispute with counsel prior to filing the motion.[3] Plaintiff now asks the court to grant relief, pursuant to Federal Rule of Civil Procedure 60(b), from the denial of his Motion to Compel, to grant the Motion to Compel and give leave to file supplemental discovery.

## II. *Discussion*

Defendant opposes the discovery of two basic categories of information: (1) Surveillance film which it does not intend to present as evidence at trial (and interrogatories seeking information relating thereto); and (2) Written reports from investigators regarding surveillance activities. Additionally, Defendant objects to Plaintiff's request for supplemental discovery, arguing that they are overbroad. However, before reaching the merits of the pending motions, the court must first consider Plaintiff's Motion for Relief from this court's prior order which denied his motion to compel discovery.

### A. *Motion for Relief from Prior Order*

 As previously stated, Plaintiff's motion to compel discovery was denied for failure to comply with Local Rule 26.2(b) and 37.1 of this court. Plaintiff requests relief from that order under Federal Rule of Civil Procedure 60(b), which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceed-

---

**2.** Plaintiff's motion encompasses all requests for information relating to the production of surveillance videotapes, including the videotapes themselves, contained in both the initial discovery requests and the supplemental discovery requests of July 9, 1993. *See* Pl's. Interrogs. at 3–4; Pl's. Req. for Produc. at 2–3; Pl's. Supplemental Interrogs.; Pl's. Supplemental Req. for Produc.

**3.** The portion of Local Rule 26.2(b) which Plaintiff violated states:
> If relief is sought under Rules 26(c) or 37, Federal Rules of Civil Procedure, concerning any interrogatories, requests for production or inspection, answers to interrogatories or responses to requests for production or inspec-

tion, copies of the portions of the interrogatories, requests, answers or responses in dispute shall be filed with the Court contemporaneously with any motion filed under these rules. S.D.Ind.LR 26.2(b). Similarly, the violated portion of Local Rule 37.1 provides:
> The Court may deny any discovery motion . . . unless counsel for the moving party files with the Court, at the time of filing the motion, a separate statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorney(s) on the matter(s) set forth in the motion. S.D.Ind.LR 37.1.

ing for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . .

Fed.R.Civ.P. 60(b). While the relief Plaintiff seeks is clear, his reliance on Rule 60(b) is misplaced. Rule 60(b)'s primary purpose is to authorize the reopening of a *closed* case or a final order; however, a district court "always ha[s] the power to modify earlier orders in a *pending* case" without relying on Rule 60(b). *Kapco Mfg. Co. v. C & O Enterprises, Inc.,* 773 F.2d 151, 154 (7th Cir.1985) (emphasis added). And, it is well established that a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. *Marconi Wireless Tel. Co. v. United States,* 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–15, 87 L.Ed. 1731 (1943). Moreover, this authority is not predicated on any federal rule, but emanates from the inherent power of the court. *See A. Hollow Metal Warehouse v. United States Fidelity & Guar. Co.,* 700 F.Supp. 410, 411–12 (N.D.Ill. 1988). Not only is a motion to reconsider an allowable method of reviewing a prior order, it is the most appropriate and advantageous method of seeking relief from an interlocutory order for a party to pursue. The beneficial aspect of distinguishing between the two methods of relief is readily apparent when the strict standard for granting relief under Rule 60(b) is contrasted with the practically unbridled discretion of a district court to reconsider a previous interlocutory order. *Compare Greene v. Union Mutual Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir. 1985), and *United States v. Jerry,* 487 F.2d 600, 604 (3d Cir.1973) (recognizing plenary power of district court to alter interlocutory orders), *with Lomas & Nettleton Co. v. Wiseley,* 884 F.2d 965, 967 (7th Cir.1989) (requiring, to grant relief under Rule 60(b)(1), more than negligence or lack of due care). As stated by the Supreme Court many years ago, "if an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity." *John Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 90–91, 42 S.Ct. 196, 199–200, 66 L.Ed. 475 (1922). Notwithstanding Plaintiff's mis-styled request for relief,

the court's desire to effectuate the intent of Plaintiff's motion allows the court to consider his Rule 60(b) motion a request for reconsideration of the court's previous order. *Greene v. Union Mut. Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir.1985) (considering motion for relief from interlocutory dismissal of certain counts of complaint as motion to reconsider dismissal).

■ Left to be decided is whether the court ought to grant this transformed motion to reconsider. In support of his motion for relief from the prior order, Plaintiff's counsel proffers his affidavit indicating that the failure to comply with the court's local rules was wholly inadvertent. Where a previous error is the result of negligence or other nonculpable conduct, and when a motion involves important issues which may effect the outcome of case, like this motion to compel, the dispute is better decided on the merits than on procedural grounds. In these circumstances, the court is generally inclined to grant a motion to reconsider when a party interposes valid arguments in support of the motion. In light of the fact that Plaintiff's converted motion to reconsider satisfies this criteria, Plaintiff's Motion to Reconsider the previous order of this court denying his motion to compel is granted.

### B. *Production of Surveillance Videotapes and Related Interrogatories*

■ As a prefatory matter, it should be noted that a district court enjoys broad discretion, within the Federal Rules of Civil Procedure, to determine the manner and course of discovery. *Eggleston v. Chicago Journeymen Plumbers,* 657 F.2d 890, 902 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). Additionally, an overarching concern in deciding any discovery issue is the policy, inherent in the federal rules, of encouraging broad, open discovery to ensure a trial is "less a game of blind man's b[l]uff and more a fair contest." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). With these thoughts as broad guidance, the court proceeds to attack the specifics of Plaintiff's motion and to interpret the discovery rules.

### 1. *Production of Surveillance Tapes*

■ Defendant objects to Plaintiff's request for production of the non-evidentiary[4] surveillance films on two grounds: (1) Non-evidentiary surveillance tapes are non-discoverable attorney work product under Federal Rule of Civil Procedure 26(b)(3); and (2) The surveillance videotapes are impeachment evidence which is protected from discovery by Local Rule 16.1(f)(5) of this court.[5] Many courts have considered the discoverability of surveillance tapes which are intended to be introduced as evidence at trial. Almost uniformly, these courts have held that evidentiary films or videotapes must be provided to the opposing party prior to trial. *E.g., Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513 (5th Cir.1993); *Forbes v. Hawaiian Tug & Barge Corp.,* 125 F.R.D. 505, 507–08 (D.Hawaii 1989); *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148, 150–51 (E.D.Pa.1973); *Kane v. Her–Pet Refrigeration, Inc.,* 181 A.D.2d 257, 587 N.Y.S.2d 339 (1992); *Williams v. Dixie Elec. Power Ass'n,* 514 So.2d 332 (Miss.1987); *Camelback Contractors, Inc. v. Industrial Comm'n,* 125 Ariz. 205, 608 P.2d 782 (Ct.App. 1980); *Crist v. Goody,* 31 Colo.App. 496, 507 P.2d 478 (1972).[6] However, few courts have considered the precise issue presented in this case: Whether surveillance tapes of a Plaintiff which Defendant does not intend to introduce at trial, but which it possesses, are discoverable by the Plaintiff prior to trial. Those courts which have considered this specific issue have, for the most part, allowed discovery of all surveillance films, including the non-evidentiary tapes, prior to trial.

*E.g., Boyle v. CSX Transp., Inc.,* 142 F.R.D. 435, 437 (S.D.W.Va.1992); *Daniels v. National R.R. Passenger Corp.,* 110 F.R.D. 160, 161 (S.D.N.Y.1986); *Martin v. Long Island R.R. Co.,* 63 F.R.D. 53 (E.D.N.Y.1974); *Dodson v. Persell,* 390 So.2d 704 (Fla.1980); *Jenkins v. Rainner,* 69 N.J. 50, 350 A.2d 473 (1976); *Olszewski v. Howell,* 253 A.2d 77 (Del.1969); *Suezaki v. Superior Court,* 58 Cal.2d 166, 23 Cal.Rptr. 368, 373 P.2d 432 (1962). Despite the abundance of opinions on the subject, divergent in analysis as they may be, no controlling precedent is available to guide the decision of this court, for neither the Seventh Circuit nor the Supreme Court has addressed this issue. Moreover, as will be shortly demonstrated, many, if not most, of the courts which ordered the production of non-evidentiary videotapes did so without explicitly considering or applying the work product doctrine. Confronted with the absence of controlling authority, the court is remanded to considering the specific discovery rules implicated by Plaintiff's request, as well as the relevant policy considerations, in reaching the correct decision under these facts.

Defendant's principal argument against discovery of the non-evidentiary surveillance films concerns its belief that the tapes are attorney work product and therefore protected from discovery. The starting point in analyzing this argument is, of course, Federal Rule of Civil Procedure 26(b)(3), which provides:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things

---

4. Though not a precise description, the term "non-evidentiary videotape" is used for brevity to denominate those surveillance videotapes, taken of Plaintiff by Defendant, which Defendant does not currently intend to use at trial. Conversely, the term "evidentiary videotape," as used in this discussion, refers to those videotapes which Defendant intends to introduce as evidence at trial. Additionally, the terms "tapes," "videotapes" and "films" are used synonymously to refer to the videotapes at issue in this motion.

5. Because of the manner in which the court resolves the work product argument, the question regarding Local Rule 16.1 and impeachment evidence remains unanswered.

6. As mentioned above, Defendant produced the one videotape which it intends to use at trial. Thus, any issue regarding the discoverability of surveillance videotapes which Defendant intends to introduce at trial is not before the court. However, the court notes that the reasoning of *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa.1973), and those decisions which adopted *Snead*'s holding, appear to be eminently reasonable resolutions of the question. *See generally* Wanda E. Wakefield, Annotation, *Photographs of Civil Litigant Realized by Opponent's Surveillance as Subject to Pretrial Discovery,* 19 A.L.R.4th 1236 (1983 & Supp.1993)) (collecting cases); 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 2015 (1970).

otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3).[7] Neither party questions the conclusion that the surveillance films were prepared in anticipation of litigation and thus enjoy the qualified privilege of work product. To this extent, Defendant's initial burden of establishing the tapes' eligibility for protection as work product is satisfied. *See Brinks Manuf. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir.1983).[8] Instead, the present dispute concerns the two part test which Plaintiff must satisfy to discover protected work product. Under Rule 26(b)(3), Plaintiff must show (1) a substantial need of the materials to prepare his case and (2) the inability without undue hardship, to obtain the substantial equivalent of the materials by other means. Fed. R.Civ.P. 26(b)(3); *Suson v. Zenith Radio Corp.*, 763 F.2d 304, 308 n. 2 (7th Cir.1985) (assigning to party seeking discovery of work product the burden of satisfying Rule 26(b)(3) test); *Henderson v. Zurn Ind., Inc.*, 131 F.R.D. 560, 569 (S.D.Ind.1990) (same). Fortunately, the parties have further narrowed the court's focus in that neither party contests Plaintiff's inability to obtain the substantial equivalent of the tapes elsewhere.[9] So, the only question before the court is whether Plaintiff has satisfied Rule 26(b)(3)'s requirement that he demonstrate a "substantial need" for the tapes in the preparation of his case.

■ Deciding if a party has demonstrated the requisite "substantial need" to justify discovery of work product involves a balancing of the value of broad discovery as an accurate method of arriving at a full resolution of each dispute with the corresponding need to prevent undue intrusion into the attorney's preparation of her case. *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.... But discovery, like all matters of procedure, has ultimate and necessary boundaries."); *Milwaukee Concrete Studios v. Greeley Concrete*, 140 F.R.D. 373, 376 (E.D.Wis.1991) (balancing interests in deciding discovery issue under Rule 26(b)(3)); *Snead*, 59 F.R.D. at 151 ("[E]very need to provide information must be balanced against the need to withhold it. The need to know is but the converse of the need to keep secret.") Striking this balance is, at best, a discretionary decision of the court in the factual context of the presented case. *See, e.g., Marrese v. American Academy of Orth. Surgeons*, 706 F.2d 1488, 1493 (7th Cir.1983) (giving district court "broad discretion" to manage discovery), *rev'd on other grounds,*

---

7. Rule 26(b)(3) continues with a proscription which the parties do not contend applies in this case and is thus irrelevant: "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

8. Even if this issue was contested and presented for decision, little doubt exists that the videos are "documents and tangible things ... prepared in anticipation of litigation...." Fed.R.Civ.P. 26(b)(3).

9. Because these tapes generally capture historical occurrences—past acts of the Plaintiff—and because the tapes are only available from the party who took them, most courts have held that this prong of Rule 26(b)(3) is automatically satis-

fied when a party seeks discovery of surveillance tapes. *See, e.g., Snead*, 59 F.R.D. at 150–51 ("While in theory, the plaintiff may tell his attorney about his physical limitations and demonstrate what he can and cannot do, obviously such descriptions would be of fragmentary help in trying to know what a hidden camera had recorded at some unknown time."); *Martin*, 63 F.R.D. at 55 ("Since plaintiff's past activities obviously can no longer be filmed, the barrier of the work-product rule is lifted."). While not deciding the question, it seems that Plaintiff's own testimony of the events depicted on the videotapes would be equally probative of the facts at issue. If true, then Plaintiff's testimony would be the substantial equivalent of the videotapes, thus disallowing intrusion into work product. However, the circumstances of a particular case could dictate a difficult conclusion.

**152**

470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Eggleston,* 657 F.2d at 902 (same). However, in exercising this discretion, relevant considerations include, among others, the importance of the protected materials to the party seeking discovery, *see Kennedy v. Senyo,* 52 F.R.D. 34, 37 (W.D.Pa.1971), the degree to which the protected material reflects the thoughts and mental impressions of an attorney but yet remains outside of that absolutely protected category of materials; the impeachment value of the material sought, *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393; and whether the party seeking discovery knows, or is merely surmising, that the materials sought contain impeaching material. *Gay v. P.K. Lindsay Co., Inc.,* 666 F.2d 710, 713 (1st Cir.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982). *See generally,* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2025 (1970) (collecting cases and attempting to generalize as to meaning of "substantial need" under Rule 26(b)(3)). In light of these considerations, Plaintiff offers three reasons to explain his "substantial" need for the non-evidentiary tapes. First, he asserts that he needs the non-evidentiary videotapes to discern if they contain any substantive evidence useful in proving his case. Second, Plaintiff argues that discovery of the tapes is necessary to protect against their improper use by the Defendant. Lastly, Plaintiff needs the tapes to assist in investigating and perhaps impeaching the procurer of the materials or the quality of the surveillance activities and materials. Pl's. Reply at 4. For authority, Plaintiff supports these arguments with the decisions in *Snead* and *Daniels,* arguing that both cases authorize discovery of videotapes not to be offered as evidence at trial.

### (a). *Substantive Evidence*

Plaintiff first argues that the non-evidentiary videos may contain substantive evidence necessary to prepare his case. Contained on the videos are, presumably, representations of the Plaintiff engaging in certain activities. In the best of worlds, and to be most helpful to his case, Plaintiff might hope these videos clearly and unequivocally demonstrate the existence of the physical injuries

he claims to have suffered while working for the Defendant. In other words, Plaintiff thinks that the videotapes may depict him "hunched over in pain after performing some activity," and that such illustrations are substantive evidence of his injuries. Pl's. Reply at 6. It is not unreasonable to conclude from the fact that Defendant has decided not to offer all of the videos as evidence that the videos probably depict occurrences favorable to Plaintiff; otherwise Defendant would offer the videos to support its defense. But, even assuming that the non-evidentiary videotapes contain evidence favorable to Plaintiff, Plaintiff overlooks the fact that he already has a readily available source of information regarding his injuries, his own knowledge and testimony, and thus has no need for the videotapes to prove his case. Existence of a viable alternative to invading work product, will, in most situations—and in this case—negate any substantial need. This conclusion is grounded in the policy underlying Rule 26(b)(3). By focusing on the movant's substantial need of the adversary's materials to prepare his own case, Rule 26(b)(3) imports notions of the comparative efficacy, and availability, of alternative means to prove or discover the same facts. For instance, in *United States v. O.K. Tire & Rubber Co.,* 71 F.R.D. 465 (D.Idaho 1976), discovery of work product was refused when the party seeking certain documents failed to show "substantial need" because the information sought was available from sources other than the opposing party. *Id.* at 467. As part of the rationale for this decision, the court stated:

> The necessity for production is reduced where an available alternative for obtaining the desired information has not been explored and ... where such alternative offers a less intrusive and less expansive approach than inquiry into confidential and privileged information.

*Id.* at 467 n. 6; *see also Bird v. Penn Central Co.,* 61 F.R.D. 43, 47 (E.D.Pa.1973); *Lett v. State Farm Fire & Cas. Co.,* 115 F.R.D. 501, 504 (N.D.Ga.1987) (refusing invasion of work product when information obtainable by deposition). Similarly, in *Flynn v. Church of Scientology Int'l,* 116 F.R.D. 1 (D.Mass. 1986), the court quashed a deposition subpoe-

na directed towards an attorney because the information sought was work product and the "discovery sought ... may be obtained by less intrusive sources than the intrusion of [attorney's] work-product." *Id.* at 4. In so holding, the court stated:

> The party seeking discovery of the lawyer's "work-product" must establish adequate reasons to justify such production. *When the desired material can be obtained elsewhere, the burden of showing such special circumstances has not been met.*

*Id.* at 3 (emphasis added). In the present case the information contained in the videotapes—facts about the extent and nature of Plaintiff's injuries—is readily attainable from the Plaintiff's own testimony. Admittedly, in some cases a Plaintiff's own testimony might be inferior to the videotapes of his activities; then the testimony would not be equivalent to the tapes and a better argument for intruding into work product could be made. Here, because Plaintiff has offered nothing to demonstrate that the evidence contained in the surveillance tapes is unique or of a higher quality than that which is available to him, intrusion into work product is not justified.[10]

Concluding that Plaintiff failed to make the showing required to invade work product is not meant to refute the notion that surveillance tapes prepared by a defendant to impeach a plaintiff may contain substantive evidence, rather than merely impeachment evidence.[11] To the contrary, the current weight of authority suggests that representations contained in videotapes are indeed substantive evidence, *e.g., Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 516–17 (5th Cir.1993); *Kane v. Her–Pet Refrigeration,* 587 N.Y.S.2d at 341, and retreats from the previously held belief that evidence used for impeachment is of a kind different and distinguishable from evidence used to prove a case. *Chiasson,* 988 F.2d at 517–18. Nor is it questioned that the videotapes may be relevant to the issue of damages or harm suffered by plaintiff. *Id.; Snead,* 59 F.R.D. at 150; *Camelback Contractors, Inc.,* 608 P.2d at 784–85. However, under the Federal Rules of Civil Procedure not all relevant, substantive evidence is discoverable, especially if that evidence is protected attorney work product. Once conceded that work product protection extends to the disputed materials, a different inquiry altogether is warranted, one which requires Plaintiff to demonstrate substantial need for the protected materials. Merely claiming that surveillance tapes prepared in anticipation of litigation *might* contain substantive evidence, especially when an alternative source for that evidence exists, does not provide "substantial need" to invade attorney work product.

### (b). *Possible Improper Use of Videotapes*

According to Plaintiff, he needs the non-evidentiary videotapes to insure they will not be used improperly. By improper use, Plaintiff fears Defendant may covertly display the other videotapes to witnesses or experts in

---

**10.** Disallowing a party to discover evidence because alternative means of procuring the same materials are available seems to admit the party failed the first portion of Rule 26(b)(3), conditioning the discovery of work product on the inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. And, having already conceded that the parties do not contend Plaintiff failed to satisfy this prong of the test, the court would be remiss to return to it as a basis for denying Plaintiff's request. However, failure of the first prong of the test should not be confused with concluding that the person seeking discovery has failed to show substantial need for the materials because the party, in essence, already possesses or could easily obtain the information sought. Each rationale is a distinct basis for rejecting an attempt to invade protected work product. Although the two notions admittedly overlap in their inquiry, the former focuses on the uniqueness of the materials in question while the latter inspects the party's need for the materials—altogether different questions.

**11.** To the extent Plaintiff argues that surveillance videotapes may contain substantive, rather than merely impeachment evidence, the court does not disagree with the decision of Judge Steckler or Magistrate Judge Endsley in the case of *Shafer v. Consolidated Rail Corp.,* No. IP 88–879–C (S.D.Ind. March 16, 1990) (Magistrate Judge Endsley) (*reh'g denied* by Judge Steckler on May 17, 1990). *Shafer* specifically decided that surveillance videotapes are not undiscoverable merely because they constitute impeachment evidence and that such tapes may also contain substantive evidence. *Id.* at 5–6. However, *Shafer* specifically did not decide, and did not consider, whether the videotapes were protected under the work-product doctrine of Rule 26(b)(3), the basis of today's decision.

an attempt to "taint" the testimony of those individuals. Defendant, in response, represented both at the pre-trial conference and in its reply to Plaintiff's Motion to Compel that the non-evidentiary videotapes would not be exhibited to any witness. Def's. Supplemental Br. in Opp'n. at 2. Although Plaintiff may reasonably fear use of the videotapes to taint witness testimony, he fails to prove how discovery of the tapes might prevent this possibility or that the fear of improper use creates the "substantial need" necessary to vitiate the attorney work product protection of Rule 26(b)(3). Even if the videotapes are produced, Defendant retains the ability to exhibit copies of the tapes to others in an attempt to influence testimony or perception of Plaintiff's alleged injury. Compelling production of the tapes will not alleviate this risk because Defendant could still show the videos to witnesses. Further, if a witness' testimony is based, in part or in whole, on the videotapes, Plaintiff can cross examine the witness regarding the basis of his opinion or testimony during trial. Moreover, Defendant's explicit representation to the court that it will not show the videotapes to any witness cures Plaintiff's worry that the tapes will be shown in some covert manner to influence testimony. Concerns about use of the videotapes to improperly influence witnesses fail to demonstrate the "substantial need" required to pierce the protection of attorney work product under Rule 26(b)(3).

### (c). *Use of Non–Evidentiary Videotapes to Impeach Evidentiary Videotapes*

Lastly, Defendant argues that he has substantial need for the non-evidentiary videotapes to assist in investigating, and perhaps impeaching, the producer of the tapes or the quality of the surveillance activities and materials which generated the tapes. Concern about possible alteration or distortion of surveillance films, and an opposing party's need to examine the film for impropriety, has been the primary basis for ordering pre-trial production of evidentiary videotapes. *See Hawaiian Tug & Barge Corp.*, 125 F.R.D. at

508; *Snead*, 59 F.R.D. at 150–51. In *Snead*, the court accepted plaintiff's argument that "unless [plaintiff] can check the integrity of the photographer, the accuracy of his methods, and review the pictures he has taken, they are deprived of the proper means to cross-examine or seek rebuttal testimony." *Snead*, 59 F.R.D. at 150. Facilitating the impeachment of evidentiary films, and allowing plaintiff an opportunity to prepare a proper response to an evidentiary film, is a valid reason for requiring pre-trial production of *evidentiary* videotapes. Otherwise, use of the film at trial without prior production might result in possible delays to prepare rebuttal to the film as well as unfair surprise which may result in the opposing party being unable to properly defend against the film. Although valid reasons exist for pre-trial production of *evidentiary* videotape, the question in this case is whether the need for *non-evidentiary* tapes is so integral to achieving these same goals that the substantial need necessary to vitiate work product protection is demonstrated. Defendant will only use one videotape at trial. This tape was produced to Plaintiff, along with the name and address of the investigative firm who prepared the videotape, soon after Plaintiff was deposed. Pl's. Mot. to Compel at Ex. D. With this information in hand, Plaintiff may now engage in additional discovery relating to the content, validity and preparation of that tape.[12] Supplemental discovery decreases the probability of surprise during trial and, by deposing the preparer of the videotape, Plaintiff has ample opportunity to inquire into the methods and validity of the videotape preparation. However, concluding that Plaintiff requires all videotapes, even those not to be introduced as evidence at trial, to satisfactorily investigate the validity of the sole evidentiary videotape, is difficult in light of the usefulness of the produced evidentiary videotape to achieve the same result.

Additional thoughts counsel against adopting a rule which would equate the marginal

---

12. As stated in *Snead*, and as agreed by the parties, once Defendant produces the videotape, "supplementary interrogatories should be answered giving full information as to the details surrounding the taking of these pictures."

*Snead*, 59 F.R.D. at 151. Whether the interrogatories propounded by Plaintiff in this case are valid under *Snead* is taken up later in this discussion. *See infra* part 2(b).

impeachment value of the production of the non-evidentiary tapes with the "substantial need" standard of Rule 26(b)(3). First, *Snead* itself broadly outlined the circumstances which constitute "substantial need" and therefore meriting pre-trial disclosure of surveillance:

> The only time there will be a substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray.

*Snead,* 59 F.R.D. at 151. Of course, there can be no meaningful discrepancy (or any discrepancy at all for that matter) between Plaintiff's testimony and videotapes not shown during trial when the finder of fact will never see the tape. If no discrepancy arises, as it would not when only non-evidentiary videotapes are in question, *Snead*'s rationale for discovery that "if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed," is inapplicable. This admonition was predicated on the assumption that the discrepancy is between Plaintiff's testimony and the evidentiary videotapes—not tapes never shown to the trier of fact. Thus, the rationale which supported production of evidentiary films in *Snead* does not proceed to support production of non-evidentiary films in this case. Instead, Plaintiff profits from disclosure of non-evidentiary videotapes only to the degree that they provide relevant information helpful in impeaching the evidentiary videotape. Quite clearly, the evidentiary videotape must be produced prior to trial to allow inquiry and investigation into its production. However, mere surmise, on Plaintiff's part, that the non-evidentiary tapes may prove some assistance in impeaching the evidentiary tape is insuffi-

cient to breach attorney work product. *Gay,* 666 F.2d at 713.

Additionally, Plaintiff cannot rely on decisions such as *Daniels* which authorized production of non-evidentiary videotapes when those decisions failed to expressly predicate full production on any verifiable relationship between complete production and enhancement of Plaintiff's ability to expose alterations or distortions in the evidentiary videotape. Those decisions authorizing full production seem to merely "lump" together non-evidentiary videotapes with those to be used at trial without explicitly recognizing, or distinguishing, the different type of films. *See Daniels,* 110 F.R.D. at 161 (justifying disclosure of all tapes with footnote citing inapposite case of *Delvaux v. Ford Motor Co.,* 518 F.Supp. 1249 (E.D.Wis.1981)); *Martin,* 63 F.R.D. at 54–55 (ordering production of all tapes without explicitly considering distinction).[13] Plaintiff's mere citation to this non-controlling precedent, devoid of helpful reasoning, does not justify production of non-evidentiary videotapes unless an independent legal rationale is also offered. And, Plaintiff does not provide the court with that rationale. In short, Plaintiff fails to demonstrate how production of the non-evidentiary videotapes will assist in verifying the validity and genuineness of the evidentiary videotapes. But, even assuming they would be of some assistance to this effort, the benefit does not weigh so heavily as to be considered the substantial need required by Rule 26(b)(3). Cases which he cites do not provide the substantial rationale for full production necessary to justify granting Plaintiff's motion to compel. Recognizing, as Plaintiff requests, the "potential for abuses of surveillance evidence," Pl's. Reply at 8, is not the same as finding substantial need for Plaintiff to receive the non-evidentiary videotapes.

13. Another case which falls into this same genre of unarticulated reasoning in ordering full production is *Boyle,* 142 F.R.D. at 437. The *Boyle* court cited *Daniels* and the case on which *Daniels* relied, *Delvaux,* in a footnote as a justification for total production. Given that *Daniels* and *Delvaux* failed to demonstrate why full production was required, *Boyle* adds nothing to the discussion by merely citing those cases. In fact, other cases have cited *Daniels* to support the conclusion that only tapes to be offered as evidence must be produced. *See, e.g., Hawaiian Tug & Barge Corp.,* 125 F.R.D. at 508. Thus, the available mish-mash of authority fails to support Plaintiff's substantial need argument unless he can demonstrate an underlying policy rationale more soundly grounded in Rule 26(b)(3). This he has failed to do.

### 2. *Initial Interrogatories & Supplemental Discovery*

█ Although Plaintiff's request for production of non-evidentiary videotapes will be denied, remaining to be decided is whether Defendant must respond to certain interrogatories and requests for production proffered by the Plaintiff. Plaintiff asks the court to compel Defendant to answer Plaintiff's Initial Interrogatories Seven and Eight. Further, Plaintiff requests that Defendant be compelled to answer Plaintiff's Supplemental Interrogatories and Requests for Production dated July 9, 1993. As always, the party opposing discovery, the Defendant in this case, bears the burden of demonstrating why the sought discovery is improper. *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 545 (N.D.Ind.1991); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 251, 254 (N.D.Ill.1978).

### (a). *Initial Discovery Requests*

█ Although Defendant has, for the most part, answered Plaintiff's Interrogatories No. 7 & 8, it continues to refuse to answer these requests and Request for Production No. 6 to the extent they seek written surveillance reports or information regarding such reports. Def's. Br. in Opp'n at 5–6 & Ex. I. For clarity, the request for production and the interrogatories will be addressed separately. Regarding the request for production, Defendant asserts that written surveillance reports prepared for Defendant by investigators are protected work product under Rule 26(b)(3) and are therefore non-discoverable.[14] To the extent Plaintiff attempts to discover the contents of any surveillance reports, Defendant is correct. Rule 26(b)(3) protects "documents and tangible things" which are "prepared in anticipation of litigation or for trial by or for another party...." Because surveillance reports are documents prepared in anticipation of the litigation between Defendant and Plaintiff, they enjoy the qualified protection of work product. Once concluded that surveillance reports are work product, the burden shifts to Plaintiff to demonstrate a substantial need for the reports and the inability to obtain the substantial equivalent of the reports without undue hardship. *Brinks Manuf. Co.*, 709 F.2d at 1120. Because Plaintiff does not offer any argument to support his burden under Rule 26(b)(3), the protection of work product remains intact and Plaintiff may not discover the contents of the surveillance reports. Thus, Plaintiff's Motion to Compel Request for Production No. 6 will be denied. Regarding Plaintiff's Interrogatories, a slightly different question is posed.[15] Work product protection is limited to "documents and tangible things," and has consistently been held not to prohibit discovery of mere facts. *E.g., Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 510 (N.D.Miss.1988); *Laxalt v. McClatchy*, 116 F.R.D. 438, 442 (D.Nev.1987); *Ford v. Philips Elec. Instr. Co.*, 82 F.R.D. 359, 360 (E.D.Pa.1979). Applying Rule 26(b)(3) to the arguments surrounding these interrogatories requires the court to discern the fine difference between an interrogatory which seeks the contents of work product (prohibited) from one which inquires into facts unrelated to the content of the work product (allowed). After a close look at Plaintiff's Interrogatory No. 8, the court believes that the request does not cross the line into impermissible discovery of work product, but instead seeks only facts surrounding the creation of the work product. So, the work product doctrine is no barrier to these requests. However, all discovery must pass a threshold test before being allowed, namely the interrogatories must "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). To the extent the interrogatories do not request disclosure of work product, but rather seeks disclosure of facts surround-

---

**14.** Plaintiff's Initial Request for Production No. 6 requests "[a]ny and all reports regarding surveillance of the plaintiff by the defendant or one of its agents."

**15.** Plaintiff's Interrogatory No. 8 provides: "State whether there has been surveillance of the plaintiff's activities from the date of the alleged occurrence to the present; and, if so state: (a) the names and last known addresses of the persons conducting said surveillance and the dates said surveillance was conducted; and (b) whether defendant is in possession of surveillance reports, and if so, the date or dates of said report; and (c) whether defendant is in possession of photographs, slides, video or motion pictures depicting plaintiff's activities, and if so, the dates said were taken."

ing the making of the reports, the information sought is not relevant because it cannot lead to "admissible evidence." If, as the court just decided, Plaintiff is forbidden from obtaining the surveillance reports, any information related to the manufacturing of the reports cannot lead to admissible or discoverable evidence—namely the protected reports. Although the court is well aware of the broadness of the relevancy standard in discovery matters, these requests exceed the boundaries of relevant material once access is denied to the surveillance reports themselves. Thus, Plaintiff's Interrogatory No. 8 is invalid and the Motion to Compel Defendant to answer this request will be denied.

### (b). *Supplemental Discovery*

 Plaintiff, upon receiving the single videotape which Defendant intends to introduce at trial, propounded Supplemental Interrogatories and Requests for Production to the Defendant which Defendant objects to on two grounds. First, Defendant argues that the requests are beyond the scope of supplemental discovery permitted by *Snead*. In this contention Defendant is correct. The *Snead* decision, and cases interpreting and applying *Snead*, carefully limit the supplemental discovery allowed following production of the evidentiary videotapes. Thus, upon production of the evidentiary videotape, "supplementary interrogatories should be answered giving full information *as to the details surrounding the taking of [the surveillance film]*." *Snead*, 59 F.R.D. at 151 (emphasis added); *see also Boyle*, 142 F.R.D. at 437. Rather than authorizing a new round of broad discovery regarding every aspect of the case, the supplemental discovery must directly relate to the surveillance film produced by the Defendant. Plaintiff's Supplemental Interrogatories and Requests for Production are clearly not directly related to the videotape which Defendant produced. Actually, the requests are, to a large extent, reiterations of the initial round of discovery, rather than the supplemental discovery au-

thorized under *Snead*. However, even absent *Snead's* authorization of the supplemental discovery, the court certainly has the discretion, if it desires, to authorize the Plaintiff's requests. But, Defendant argues that these supplemental requests, unsupported by *Snead*, were filed beyond the discovery deadline provided in the Case Management Plan ("CMP") which was adopted by the court on September 11, 1992. In response, Plaintiff argues that Defendant implicitly agreed, in its statement in connection with its objection to the initial interrogatories, to allow the supplemental discovery after production of the evidentiary videotape.[16] Under the CMP, discovery was to end on July 1, 1993. Plaintiff filed these supplemental requests on July 3, 1993. If, under the rationale of *Snead*, such supplemental discovery was warranted, the court would be willing to modify the CMP to allow these requests. Alternatively, if Defendant had, as Plaintiff urges, made a broad promise to answer general supplemental discovery upon deposing Plaintiff, the court might be inclined to estop Defendant from complaining now about any violation of the CMP. However, Defendant's agreement to respond to discovery was strictly limited to answering the initial, objectionable discovery, and cannot be construed to have written Plaintiff a blank check for supplemental discovery. Further, *Snead* does not support the requests, nor does Plaintiff explain the necessity of the supplemental discovery. The court is without reason to modify the CMP or to allow Plaintiff to conduct the supplemental discovery. Thus, lacking support from *Snead* or another valid reason to extend discovery, Plaintiff's Motion to Compel Defendant to answer the Supplemental Interrogatories and Requests for Production will be denied.[17]

### III. *Conclusion*

Although the work product doctrine runs counter to the general preference of open discovery in the federal courts, it serves a useful purpose in protecting trial preparation

---

**16.** Specifically, Defendant stated "[w]ithout waiving the foregoing objections, Defendant agrees to answer interrogatories Nos. 7 and 8 [requests for production] after it has taken Plaintiff's deposition." Def's. Ans. to Interrog. at 14–15; Def's. Resp. to Req. for Produc. at 23.

**17.** However, Plaintiff is authorized to request additional discovery which is directly related to the produced surveillance videotape and its production. To this extent, the holding of *Snead* is directly applicable.

materials. Although surveillance films offered as evidence at trial must be provided to the opposing party upon proper request, non-evidentiary films remain undiscoverable unless a substantial need for the films is shown. Although today's decision is, of course, confined to the facts and arguments presented by the present parties, it is difficult to conceive of any circumstances which might prove so compelling as to justify disclosure of non-evidentiary videotapes and the concomitant intrusion into attorney work product. Because Plaintiff has failed to offer sufficient reasons, amounting to substantial need, for the films, he may not discover them. This decision specifically answers questions regarding the Motion to Compel Defendant to answer Plaintiff's initial Requests for Production and Supplemental Requests for Production.

For the reasons stated above, Plaintiff's Motion to Compel Discovery is hereby **DENIED.** Defendant is neither required to produce any videotape which it does not intend to introduce as evidence nor to answer the Supplemental Interrogatories or Requests for Production propounded by Plaintiff.[18] However, Defendant must, to the extent it has yet to do so, respond to Plaintiff's initial discovery request which it objected to, in a manner consistent with today's decision.

ALL OF WHICH IS ORDERED.

---

18. Of course, if Defendant later decides to offer other surveillance videos or films as evidence, the obligation to produce evidentiary videotape will apply to the new evidence.